UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES CULP, Personal Representative of
the Estate of Rosetta C. Williams, Deceased;
Marquetta Hill, as next Friend and Legal
Guardian of Toi L. Edwards, a minor; Leeyeng
Williams, individually and as Next Friend and
Legal Guardian of Tanei Jerry, a minor; Teiagh
Williams, a minor; Betty Williams; Ieshia
Dawson; and Tieshia Dawson,

  Plaintiffs,

                Case No. 06-15598
-vs-                Judge Avern Cohn

Detroit Police Officers SHANTELL
RUTLEDGE, Derrick Mason, Rocco
Corsetti and Stephan Simmons, Detroit
Police Sergeant Durelle Cooper, and
Detroit Chief of Police Ella Bully-Cummings,
in their individual and official capacities,
and the City of Detroit, a municipal
corporation, jointly and severally,

  Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. Introduction

This is a civil rights case brought under 42 U.S.C. § 1983. The claim arises from the shooting death of Rosetta Williams by her daughter's boyfriend, Kevin Collins (Collins). The named plaintiffs are (1) James Culp, personal representative of the estate of Rosetta Williams; (2) Marquetta Hill, next friend and guardian of Toi L. Edwards; (3)

Leeyeng Williams, individually, next friend, and legal guardian of Tanei Jerry; (4) Teiagh Williams, a minor; (5) Betty Williams; (6) Ieshia Dawson; and (7) Tieshia Dawson. Plaintiffs are all relatives of Rosetta Williams.

Plaintiffs filed suit against defendants (in both their individual and official capacities) under a state-created danger theory based on the Fourteenth Amendment. The named defendants are Detroit Police Officers (1) Shantell Rutledge (Rutledge), (2) Derrick Mason (Mason), (3) Rocco Corsetti (Corsetti), (4) Stephan Simmons (Simmons), (5) Sergeant Durelle Cooper (Cooper), and (6) Chief of Police Ella Bully-Cummings.[1]

Before the Court is defendants' motion for summary judgment. For the reasons discussed below, defendants' motion will be granted.

## II. Facts

The following are the facts as gleaned from the record. Except as noted, none are in serious dispute.

Rosetta Williams's daughter, Jamika Williams, was involved in a long-distance relationship with Collins. After the birth of their child, the couple began having problems. Jamika Williams terminated the relationship after Collins physically assaulted her while she was visiting him at his home in Minneapolis, Minnesota. After Jamika Williams broke off the relationship there was no contact between the two for several months.

---

[1] In their response to defendants' motion for summary judgment, plaintiffs agreed to withdraw their claims against the City of Detroit. See Plaintiffs' Response to Defendants' Statement of Material Facts Not in Dispute, ¶ 4. Plaintiffs further admitted at oral argument that Police Chief Ella Bully-Cummings had no involvement in the case.

On February 1, 2006, Collins assaulted Jamika Williams and her infant at the Zion Hope Missionary Baptist Church (the church) in Detroit, Michigan. Parishioners at the church helped stop the assault. Rutledge and Mason responded to emergency calls from the scene. Collins left the church before police arrived and was never arrested. Rutledge prepared a police report on the incident, and Corsetti reviewed the report before forwarding it to Simmons. Rutledge and Mason then escorted Jamika Williams to the home of her aunt, Leeyeng Williams. Neither Rutledge, Mason, Corsetti, nor Simmons had any further involvement with the case.

That night, Jamika Williams and her parents, James Culp and Rosetta Williams, drove to a police station to file a formal complaint against Collins for assault and battery.[2] Jamika Williams told the police that she feared for her life and the lives of her child and family. The written witness statement prepared at the station appears to indicate that Cooper took Jamika Williams's statement.[3] Jamika Williams says that Cooper promised her that the police would arrest Collins and seek to prosecute him for the assault.

Plaintiffs say that they relied on the promise to Jamika Williams to arrest Collins as the basis for their continuing attendance at the church. On February 26, 2006, Collins returned to the church armed with a sawed-off shotgun and sat in the top row of

---

[2] Rosetta Williams remained in the vehicle; only Jamika Williams and her father, plaintiff James Culp, entered the police station.

[3] In her deposition, Cooper denied taking Jamika Williams's statement. Neither Jamika Williams nor James Culp could positively identify Cooper as the officer who took Jamika Williams's statement; in their affidavits, they refer to her only as a "medium light-skinned black female officer." However, Cooper's signature appears at the top of the witness statement. Taking the evidence in the light most favorable to the plaintiffs, the signature is sufficient to establish that Cooper took Jamika Williams's statement.

3

the balcony. Neither Jamika Williams nor her father (James Culp) was present at the church. Rosetta Williams, along with her sister (Leeyeng Williams), mother (Betty Williams), nieces (Teiagh Williams and Tanei Jerry), and goddaughter (Toi Edwards), entered the church and sat in the first row of the balcony. Collins then began shouting, demanding to know the whereabouts of Jamika Williams. Rosetta Williams and Collins exchanged heated words. Collins then exposed a shotgun from underneath his coat and began firing.

Rosetta Williams died as a result of two gunshot wounds to her chest. Toi Edwards was struck in her left hand, resulting in the loss of her little finger. Kevin Collins died of an apparent self-inflicted gunshot wound near the church.

### III. Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must

4

present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### IV. Analysis

At oral argument, plaintiffs' counsel conceded that, except for Cooper, the named individual defendants were involved only peripherally with the events at issue and should be dismissed from the case. Accordingly, the only issue before the Court is whether Cooper is entitled to summary judgment.

To prevail on a claim of non-custodial state-created danger under the due process clause of the Fourteenth Amendment, a plaintiff must show (1) an affirmative

5

act by the state which either creates or increases the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed plaintiff specifically at risk, as distinguished from the risk that affects the public at large; and (3) that the state knew or should have known that its actions specifically endangered plaintiff. Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003).

### A. There Is No Evidence of An Affirmative Act By Cooper That Created Or Increased The Risk That Plaintiffs Would Be Exposed To An Act of Violence By A Third Party

Plaintiffs claim that Cooper put them at increased risk by promising that the police would arrest Collins but failing to ensure that he was actually arrested. Plaintiffs say that they relied on Cooper's promise to arrest Collins when they continued to attend services at the church, and that they would not have attended services at the church absent the promise. Cooper says that Collins was primarily responsible for the danger to the plaintiffs and that her promise to arrest Collins is insufficient to give rise to liability under a state-created danger theory.

Plaintiffs' claim is weak in light of Losinski v. County of Trempealeau, 946 F.2d 544 (7th Cir. 1991). In Losinski, the plaintiff's decedent left her husband and filed for divorce. She asked police to accompany her to her husband's trailer in order to retrieve some personal items; she was afraid of her husband's violent tendencies and the fact that he kept firearms in the house. A police officer accompanied the decedent to the trailer but stayed in a hallway while the decedent and her husband argued in an adjacent room. The husband ultimately shot and killed the decedent. Her relatives brought a § 1983 claim, arguing that the decedent would not have gone to the trailer

6

without police protection and that the police officer failed to protect her. The district court granted the defendants' motion for summary judgment. The Seventh Circuit affirmed, holding that the husband rather than the state created the danger to the decedent. The Seventh Circuit pointed out that the police did not force or encourage the decedent to go to her husband's trailer and did not force her to stay after she arrived. Id. at 550-51. The facts here are analogous: Collins created the danger to the plaintiffs; Cooper did not encourage the plaintiffs to go back to the church. Cf. Caldwell v. Louisville, 120 Fed. Appx. 566, 573 (6th Cir. 2005) (denying municipality's motion for summary judgment on state-created danger claim where police department increased risk to decedent by forcing her to complete paperwork in support of arrest warrant against an abusive boyfriend who later murdered her).

Also, even if plaintiffs relied on Cooper's assurances that Collins would be arrested in continuing to attend services at the church, the causal link to the attack is attenuated because Collins could have attacked the plaintiffs anywhere at any time. See Webb v. City of Philadelphia, No. 98-2261, 1999 WL 793466, at *7 (E.D. Pa. Oct. 6, 1999).

There is a further problem with the plaintiffs' claim that Cooper created or increased the risk that Collins would commit violence against them: plaintiffs cannot show that arresting Collins would have made the shooting any less likely to occur, because even if Collins had been arrested he likely would have been able to post bail and remain free. The Michigan Interim Bond Act provides that after a warrantless arrest for a misdemeanor, a defendant has the right to post bond as established by a judge or district court magistrate. MICH. COMP. LAWS § 780.582a. The bond can be no more

7

than the $500 maximum fine authorized by the assault statute. MICH. COMP. LAWS §§ 750.81(1), 780.581(2).  Collins was gainfully employed and likely would have been able to post bond.  After doing so, Collins likely would have been able to carry out the shooting in exactly the same manner.  It is speculative for plaintiffs to say he would not have done so – they have presented no evidence in this regard.  For this reason as well, plaintiffs have failed to proffer evidence sufficient to show that Cooper's promise to arrest Collins and the subsequent failure to follow through on this promise increased the risk that plaintiffs would be exposed to an act of violence on Collins's part.

### B. There Is No Evidence That Cooper Knew Or Should Have Known That Its Actions Specifically Endangered Plaintiffs

Plaintiffs' claim lacks merit for the additional reason that there is no evidence that Cooper knew or should have known that the failure to arrest Collins posed a specific risk to the plaintiffs, as opposed to a generalized risk to the public.  In their affidavits, Jamika Williams and James Culp say that they told Cooper that Collins caused them to fear for the safety of their entire family.  However, neither Jamika Williams nor James Culp identify any factual basis for their fear that Collins would endanger members of the family other than Jamika Williams.  All of Collins's previous threats and acts of violence were directed solely at Jamika Williams, not other members of her family.  Jamika Williams's witness statement, the only piece of evidence tying Cooper to the events at issue, does not contain any information tending to suggest that Collins posed a threat to other members of her family.  During his deposition, James Culp testified that, so far as he knew, Collins did not make any threats or commit any acts of violence against any member of the family prior to the February 1 incident at the church.  Jamika Williams

testified that she did not see Collins between the time she broke off their relationship and the February 1 incident and that during that period she did not believe that Collins posed a threat to members of the family other than herself and her child.

In sum, there is nothing to suggest that Cooper was aware of any evidence tending to suggest that Collins was dangerous other than the fact that he had, on a single occasion, assaulted Jamika Williams without using a weapon. This is not sufficient to establish that Cooper should have known that Collins posed a specific danger to the plaintiffs. See Webb, 1999 WL 793466, at *4 (granting summary judgment on state-created danger claim to security guard who negligently allowed assailant to enter courthouse where security guard was unaware that assailant posed a danger to plaintiff).

## V. Conclusion

For all the reasons stated above, defendants' motion for summary judgment is GRANTED. The case is DISMISSED.

SO ORDERED.


Dated: July 7, 2008
          s/Avern Cohn
          AVERN COHN
          UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 7, 2008, by electronic and/or ordinary mail.

          s/Julie Owens
          Case Manager, (313) 234-5160